


RECEIVED PJJ
5/27/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANGELA CAGWIN, )
          )
     Plaintiff, )
          )
     v. )    Case No. <u>1:25-cv-05662</u>
          )
DAVID GARCIA, ANTOINETTE GRANHOLM,
LISA LOVELACE, PATRICIA FLYNN, JEANINE
PARKER-ROSS, DAVID GOTZH, JEFFREY
CORSO, KIDZ ABOVE ALL, LLC, MIDWEST
APPEALS, LLC, FLYNN, PARKER-ROSS &
ASSOC., and JOHN DOES 1–10, Defendants,
          )
          )
     Defendants. )

## FIRST AMENDED - COMPLAINT FOR RICO, CIVIL RIGHTS, AND EQUITABLE RELIEF

### I. PARTIES

**Plaintiff ANGELA CAGWIN** is a resident of New Lenox, Illinois, and the biological mother of two minor children. She brings this action in her individual capacity and on behalf of her children's interests, asserting violations of her civil rights, retaliation as a whistleblower, and injury under federal law stemming from a pattern of racketeering and judicial misconduct.

**Defendant DAVID GARCIA** is a former judge of the 12th Judicial Circuit Court in Will County, Illinois. He is sued in his individual capacity for his role in assigning unlawful supervision, enabling an unlicensed enterprise to operate within the courtroom, and violating Plaintiff's due process rights.

**Defendant ANTOINETTE GRANHOLM** is a current judge of the 12th Judicial Circuit Court in Will County, Illinois. She is sued in her individual capacity for continued obstruction of appellate mandates, retaliatory judicial conduct, and allowing false GAL reports and improper proceedings to continue.

**Defendant LISA LOVELACE** is the founder and operator of **Kidz Above All, LLC**, a private supervision company used in Will County family law cases. She is sued in her individual capacity for operating without licensure, training, or oversight and for financially benefiting from extended custody interference imposed by judges and attorneys.

**Defendant PATRICIA FLYNN** is an attorney practicing in Illinois and co-founder of Flynn, Parker-Ross & Associates. She is sued in her individual capacity for aiding in the creation of supervision orders based on false pretenses, accepting payments for unlawful services, and participating in the concealment of the unlicensed enterprise.

**Defendant JEANINE PARKER-ROSS** is an attorney licensed in Illinois and the original registrant of **Kidz Above All, LLC**. She is sued in her individual capacity for her role in forming the supervision enterprise and collaborating with judicial officers to sustain its use for personal and professional gain.

**Defendant DAVID GOTZH** is an attorney appointed as Guardian ad Litem (GAL) in the underlying custody matter. He is sued in his individual capacity for acting outside his judicial function, interfering with appellate enforcement, publishing public statements as

GAL while failing to represent the children's interests, and profiting through his private business, **Midwest Appeals, LLC**.

**Defendant JEFFREY CORSO** is a former attorney for Plaintiff. He is sued in his individual capacity for enabling judicial misconduct by remaining silent despite clear knowledge of fraud and obstruction. His inaction is now being cited by co-defendants to deflect liability, and his manipulation of Plaintiff's understanding of appellate rights caused further harm and delay.

**Defendant KIDZ ABOVE ALL, LLC** is an Illinois limited liability company created by Lisa Lovelace and originally registered by Jeanine Parker-Ross. The LLC operated an unlicensed, unregulated supervision business that profited from prolonged court-ordered parenting restrictions and served as the vehicle for multiple predicate acts described herein.

**Defendant MIDWEST APPEALS, LLC** is a business entity owned and operated by David Gotzh. It was used as a platform to issue unauthorized GAL statements, charge fees, and interfere with Plaintiff's access to due process while falsely presenting itself as part of the court system.

**Defendant FLYNN, PARKER-ROSS & ASSOCIATES** is a law firm operated by Patricia Flynn and Jeanine Parker-Ross. It served as a conduit for filing false supervision-based pleadings, facilitating unlawful billing, and shielding attorney conduct from discovery.

**JOHN DOES 1–10** are currently unnamed individuals or maturing minors who may have standing to assert claims as they reach the age of majority or whose roles in the conspiracy will become known through discovery.


## II. INTRODUCTION

This action seeks to expose and redress a court-enabled racketeering enterprise that has manipulated custody proceedings, fabricated supervision orders, and obstructed justice for over five years. What began in 2019 as a custody dispute following a felony child abuse investigation against Respondent Jeffrey Trend soon escalated into a retaliatory legal campaign against Plaintiff, Angela Cagwin (formerly Trend), after she began uncovering and reporting misconduct by judges, attorneys, and supervision providers operating outside lawful authority.

The turning point occurred when Plaintiff objected to court-assigned supervision by Lisa Lovelace, founder of the unlicensed and unregulated business Kidz Above All. Lovelace was not an independent professional—she was Judge David Garcia's judicial committee fundholder and head of his campaign committee. According to state campaign finance records (D-2 reports), Garcia paid Lovelace $13,000 in committee funds. This undisclosed financial relationship created a direct conflict of interest and should have barred Lovelace from participating in any court-ordered supervision. Plaintiff submitted formal reports disclosing this relationship to state and judicial oversight bodies, but her reports were ignored.

Plaintiff's then-attorney, Angela Henderson, submitted forged documents and committed notary fraud to install Lovelace as supervisor over Plaintiff's objections. Henderson later admitted the forgery and was fined $5,000 under her notary bond. She was never removed as a notary, despite her misconduct, and was closely tied to Judge Garcia's judicial committee. When Plaintiff began raising these issues, attorneys Patricia Flynn and Lisa Lovelace coordinated with Lovelace's cousin, Jodi Turnbough—an employee of the Lockport Police Department—to access private FOIA-restricted police emails and use them to secure retaliatory orders of protection. These orders were based not on any threat or harm, but simply on Plaintiff's inquiries into the legality of the supervision business during COVID-19 shutdowns.

Plaintiff endured more than two years of invalid orders of protection, which cost her multiple jobs, her FOID rights, and access to her children. She ultimately prevailed in two appeals, both decided on August 8, 2023, which voided the protective orders and restored the original Marital Settlement Agreement (MSA). Nevertheless, the court refused to enforce the mandates. Judge David Garcia was quietly removed, and Judge Antoinette Granholm was installed. Granholm took months to hold hearings, ultimately admitted she had only skimmed the mandates, and proceeded in open defiance of them. Her rulings have allowed continued unlawful withholding of Plaintiff's 17 and 15-year-old children, while new hearings and financial rulings have been issued in violation of the remand authority.

Throughout the litigation, David Gotzh has failed to serve as a Guardian ad Litem in any lawful or ethical capacity. He repeatedly interfered with appellate procedures, misrepresented mandate content, and falsely claimed parenting agreements were permanent rather than temporary—leading to an appeal Plaintiff had to file and ultimately won. He perjured himself on the stand regarding those agreements, triggering years of unlawful separation between Plaintiff and her children. While he was never formally removed from the case, the trial court eventually halted all further investigation assignments to Gotzh. He now continues to interfere in appellate review proceedings, submitting filings despite being absent from the hearings in question and attempting to distort the record. His conduct has obstructed enforcement of binding orders and harmed Plaintiff's family while simultaneously promoting his own commentary about the case on YouTube, Substack, and LinkedIn.

This Complaint seeks declaratory and monetary relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and civil rights statutes 42 U.S.C. §§ 1983 and 1985, for a coordinated pattern of legal abuse, retaliation, forgery, exploitation of court process, and obstruction of justice. The same individuals and structure described herein have been used to target not only Plaintiff, but numerous other parents and children in Will County, through the same unlawful supervision enterprise, court manipulation, and extended litigation tactics. The harm described in this Complaint reflects not only one family's loss, but the systemic operation of a judicially protected enterprise built on the prolonged separation of children from safe parents and the financial exploitation of families seeking justice.

III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and 42 U.S.C. §§ 1983 and 1985. Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3) and (4), which confer original jurisdiction over civil rights actions brought under federal law.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all defendants reside in the State of Illinois and a substantial part of the events or omissions giving rise to the claims occurred in this district. Specifically, the events took place in Will County, Illinois, which lies within the Northern District of Illinois.

IV. FACTUAL BACKGROUND

Plaintiff Angela Cagwin is the biological mother of three sons, one of whom has aged out of the family court system. In 2019, following a felony child abuse investigation against her former spouse, Jeffrey Trend, the court initially recognized the danger posed to the children. However, this protection quickly collapsed when Plaintiff began reporting misconduct by attorneys and court-appointed individuals tied to a supervision business that operated outside regulatory oversight.

In retaliation for Plaintiff's whistleblowing and inquiries into the unlicensed business 'Kidz Above All,' operated by Lisa Lovelace, attorneys and judicial actors began targeting her through procedural abuse. Her then-attorney, Angela Henderson, submitted forged and falsely notarized documents to embed Lovelace into the case as a court-appointed supervisor. Henderson later admitted the forgery and was fined $5,000 under her notary bond, yet was never removed from notary service and maintained ties to Judge Garcia's judicial campaign committee.

Judge Garcia assigned supervision and court roles to Lovelace despite her dual role as his judicial fundholder, a financial conflict revealed through D-2 campaign finance reports. The court refused to investigate or remove Lovelace even after formal complaints were submitted. Plaintiff's opposition led to a manufactured series of emergency orders of protection filed by attorneys Patricia Flynn and Lisa Lovelace, who coordinated with Lovelace's cousin, Jodi Turnbough—a Lockport police employee with access to confidential systems.

Turnbough accessed confidential emails between Plaintiff and a Lockport sergeant and funneled these to attorneys, who misused them in court to create the appearance of harassment. These fabrications formed the basis for retaliatory protective orders that removed Plaintiff from multiple jobs for over two years and stripped her of her FOID rights. Later, in April 2021, Plaintiff lost custody of her children through a separate ex parte order of protection initiated by her ex-spouse's counsel, Patricia Flynn, who is also

the law partner of Jeanine Parker-Ross—the former/original LLC registrant for Kidz Above All.

Plaintiff prevailed in her first two appeals at the end of 2022, which resulted in dismissal of the orders of protection filed by Lisa Lovelace and Jodi Turnbough. She later prevailed again in two additional appeals issued on August 8, 2023, mandating restoration of custody under the original Marital Settlement Agreement. Nevertheless, the trial court has refused to enforce these mandates by putting the blinders on and ignoring motions to compel for over 20 more months (to the date of this writing).

Judge Garcia was replaced in the beginning of 2025 by Judge Antoinette Granholm, who delayed four more hearings and created further child-damaging orders. She admitted on record that she had not read the mandates, then later stated she had only skimmed the last line and disagreed with its interpretation. She twice refused a verbal request for a Rule 308 interlocutory appeal. Judge Granholm then announced her plan to proceed with hearings unrelated to the remanded issues and made clear she would not return the parties to their prior status under the MSA. Plaintiff's 15-year-old child remains unlawfully withheld.

Additionally, Guardian ad Litem David Gotzh repeatedly fabricated or omitted material facts in his role. He misstated what Plaintiff's children disclosed to him, ignored or misrepresented school counselor and therapist input, and submitted false reports to the

court. On February 4, 2022, he perjured himself on the stand, falsely claiming that a temporary parenting arrangement was a permanent agreed order—an act that triggered the unlawful removal of Plaintiff's children, two years of supervised visitation and $14,000 for it, and required an appeal to reverse. Gotzh also neglected his responsibilities during urgent child emergencies and was later found to have lied about his availability. He told the court he was unavailable due to a family medical crisis, specifically his mother suffering a heart attack and would be passing away for weeks. However, at the same time, he was actively publishing content on his professional appellate law website and YouTube channel about traveling, even internationally, including a trip to Paris. These public posts were not private—they were promoted through his business and intended for public recognition. When Plaintiff questioned how he was able to work remotely from abroad but not respond to her child's emergency, Gotzh falsely accused her of 'stalking' rather than address the contradiction. Despite being halted from further investigative duties by the trial court, he has continued to interfere with Plaintiff's appellate filings, including improper participation in her Rule 369(b) review. His conduct has caused significant harm to Plaintiff and her children and reflects a pattern of dishonesty and self-interest inconsistent with any role as a neutral child advocate.

V. PATTERN OF RACKETEERING ACTIVITY

Defendants engaged in a coordinated and ongoing pattern of racketeering activity as defined under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. This activity extended over a period exceeding five years and involved numerous

predicate acts, including but not limited to mail fraud, wire fraud, obstruction of justice, tampering with witnesses, and deprivation of civil rights under color of law.

The enterprise—centered around the unlicensed business 'Kidz Above All'—was designed in late 2019 to profit from fabricated supervision orders, manufactured protective orders, and extended litigation. Key participants, including Judge David Garcia, attorneys Patricia Flynn and Jeanine Parker-Ross, and supervision business operator Lisa Lovelace, acted in concert to delay reunification of families and secure personal income through cash or off-book payments. These efforts were supported through misuse of judicial authority and legal procedure to compel unwarranted supervision, prolong custody proceedings, and isolate targeted parents.

Predicate acts included the filing of forged and false documents (including notarized affidavits and service returns), issuing court orders based on fabricated grounds, and obstructing appellate mandates. False claims were routinely submitted to the court and to outside agencies to secure unlawful protective orders, stall proceedings, and reroute litigation to attorneys aligned with the enterprise.

Multiple actors, including GAL David Gotzh and court clerks or bailiffs, participated in the concealment of evidence, submission of false certifications, and extended manipulation of scheduling to prolong proceedings and exhaust the Plaintiff. When Plaintiff attempted to bring attention to these matters through appellate action or whistleblower reporting, she was met with threats, delays, and defamatory accusations, including the false label of 'stalker' used by GAL Gotzh to discourage valid inquiry and retaliate for exposure of the enterprise.

These acts were not isolated or administrative. They form a closed and continuing pattern of

conduct, supported by financial transactions through unregulated supervision, suppression of court orders and appellate mandates, and coordinated interference in federal rights of access, parenting, and redress. The pattern was designed to protect the enterprise, destroy the credibility of parents who reported it, and shield its primary beneficiaries—attorneys, judicial allies, and contracted agents like Lisa Lovelace and Jodi Turnbough.

The predicate acts satisfy the 'continuity' requirement under RICO, as they involved repeated use of the courts and public offices to advance the enterprise's financial and political goals, extended over multiple years, and remain ongoing at the time of this filing.

The enterprise's reach extended beyond Plaintiff's case and impacted numerous families in Will County, DuPage County, and surrounding jurisdictions. Plaintiff has documented similar fraudulent supervision arrangements in other custody cases involving Kidz Above All. In one case, the supervising parent obtained Zelle payment screenshots showing Lisa Lovelace collecting supervision fees through her husband's account, or demanding cash only. Her bankruptcy filing showed zero income, despite public records confirming she received $13,000 from Judge David Garcia's judicial campaign fund, and worked actively for the supervision business. Lovelace also falsely claimed employment at two law firms—Melton Law and Parker-Ross & Associates—despite not being a licensed attorney. Notably, Barbara Melton was another judicial committee head for Judge Garcia, and Melton & Tedone represented the same supervised parent who submitted the Zelle receipts. That parent also discovered, while seeking emergency medical care for her child post-visitation, that Lovelace's residence included a known child sex offender (her father)—a risk concealed from the courts. During the COVID-19 shutdown, Lovelace claimed she was given special local judicial authorization to conduct supervision from her home—bringing court-ordered children, into a household with unscreened residents. No safety checks, licensure, or oversight mechanisms were implemented. When multiple parents raised concerns, they

were met with retaliatory legal action or denial of services. This sustained pattern of abuse, concealment, and profit-seeking clearly demonstrates that the enterprise extended its illegal operations across multiple venues, used judicial immunity to shield its conduct, and inflicted lasting harm on both children and their protective parents.

Transcript records from a related DuPage County case further call into question Lisa Lovelace's own statements about the volume of families she supervised. In sworn testimony, she claimed to have supervised "hundreds" of families across multiple counties. Documentation and parent reports reveal that Lovelace routinely charged between $50 to $75 per hour, supervising multiple families simultaneously, often for 2–4 hours at a time, several days a week. These arrangements resulted in thousands of dollars in unreported cash or digital payments over multiple years. Plaintiff and other parents can testify that none of these funds were ever documented in court nor reported to taxing authorities. Plaintiff's ex-spouse, Jeffrey Trend, was among those who paid Lovelace weekly for months, yet no record exists in the case docket or Lovelace's public filings. Many parents were denied receipts and forced to pay in ways that prevented traceability. This consistent and calculated effort to conceal income—combined with Lovelace's public bankruptcy filing stating zero earnings—establishes a willful and fraudulent scheme of tax evasion and financial concealment, further sustaining the racketeering enterprise's operations and protecting its key actors from scrutiny.

In addition to financial and custody-related misconduct, the enterprise engaged in retaliatory conduct violating Plaintiff's federally protected disability rights. After the Chief Judge of Will County approved reasonable ADA accommodations for Plaintiff due to a documented seizure condition, Judge David Garcia disregarded those accommodations, even while Plaintiff was pregnant and on hospital bedrest with high-risk complications. On one occasion, Plaintiff's attorney in-person, and plaintiff attended hearing via Zoom while

hospitalized and connected to an IV, but Garcia declared her 'absent' and entered a default financial ruling against her. These rulings included attempts to extort money under the false premise of unpaid maintenance, despite those funds having already been credited to Plaintiff's ex-spouse through the IRS and never legally owed. Will County further ignored Plaintiff's valid fee waivers on multiple occasions, including through the transcript office, which refuses to comply with indigency filings unless explicitly ordered by the appellate court—an unlawful barrier to due process. Judge Antoinette Granholm has continued this ADA disregard by insisting Plaintiff will attend trial in-person despite documented seizure disorders and valid accommodations. Additionally, Plaintiff was physically threatened with retaliation and want for jailing, and pushed against a wall by Patricia Flynn and Lisa Lovelace in Feb.,2021 while attending a hearing in support of another litigant. Witness affidavits confirm the assault. This targeted campaign of physical, legal, and financial retaliation demonstrates the organized abuse inherent in the racketeering enterprise and supports claims of obstruction, intimidation, and systemic due process violations under color of law. The pattern of racketeering activity alleged herein satisfies both the relatedness and continuity elements required under RICO. As articulated in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), a RICO pattern must show relationship among acts and continuity over time, both of which are present in this case through repeated fraudulent acts and concealment. Additionally, the enterprise described meets the definition of an association-in-fact enterprise as recognized in United States v. Turkette, 452 U.S. 576 (1981), encompassing both legal entities and informal groupings engaged in coordinated misconduct.


Ongoing Retaliation and Violation of Federal Protections

As of May 20, 2025, Defendant Patricia Flynn has begun attempting to extract payment from the Plaintiff by targeting funds connected to a marital annuity that is legally

protected under ERISA, and explicitly discharged in Plaintiff's 2019 bankruptcy case. Flynn has issued threats and demands via email urging Plaintiff to disregard federal protections in order to satisfy unrelated attorney fees allegedly owed to a third party. These efforts, if pursued, would constitute willful violations of 11 U.S.C. § 524(a) (bankruptcy discharge injunction) and 29 U.S.C. § 1056(d) (anti-alienation provision of ERISA), and further support the pattern of retaliatory abuse and unlawful financial targeting central to this RICO and civil rights action. Plaintiff reserves the right to amend or supplement this Complaint as further evidence or actions occur.

## VI. CLAIMS FOR RELIEF

**Count I: Civil RICO – 18 U.S.C. § 1962(c)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This Count is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), against all Defendants named in the enterprise, including but not limited to David Garcia, Patricia Flynn, Jeanine Parker-Ross, Lisa Lovelace, Jodi Turnbough, David Gotzh, and others engaged in the pattern of racketeering activity.

Each Defendant is a 'person' as defined by 18 U.S.C. § 1961(3), capable of holding a legal or beneficial interest in property. The 'enterprise' consists of a group of individuals associated in fact, including judicial officers, attorneys, supervision contractors, and court agents, who functioned as a continuing unit for the purpose of engaging in repeated racketeering activity

as defined by 18 U.S.C. § 1961(4).

The enterprise engaged in activities affecting interstate commerce, including the collection of cash payments for supervision services not reported or regulated, misuse of court services and documents, and transmission of fraudulent communications through mail, email, and electronic court systems.

Defendants conducted and participated in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), which includes, but is not limited to: (a) mail and wire fraud under 18 U.S.C. §§ 1341 and 1343; (b) obstruction of justice under 18 U.S.C. § 1503; (c) tampering with witnesses or victims under 18 U.S.C. § 1512; (d) deprivation of rights under color of law under 18 U.S.C. § 242; (e) and fraud related to supervision fees, court orders, forged filings, and misrepresented appearances in court.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injury to business and property, including financial losses, career damage, reputational harm, emotional distress, and loss of access to her children for over four years in violation of standing appellate orders.

Plaintiff is entitled to treble damages and attorney's fees under 18 U.S.C. § 1964(c), as well as declaratory and injunctive relief necessary to prevent further continuation of the enterprise and ongoing harm to her and similarly situated individuals.

_Relevant Case Law_

**Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 493 (1985)** – Civil RICO actions require predicate acts, not criminal convictions.

**H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)** – Defines 'pattern' as related and continuous conduct.

**Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)** – Establishes 'operation or management' test under § 1962(c).

**Count II: Civil Rights – 42 U.S.C. § 1983**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This Count is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The Defendants acted under color of state law at all times relevant to this Complaint.

Defendants, including but not limited to Judges David Garcia and Antoinette Granholm, Guardian ad Litem David Gotzh, and attorneys Patricia Flynn, Jeanine Parker-Ross, and others, acted jointly and in concert to deny Plaintiff due process, equal protection, access to the courts, and freedom from unreasonable seizure and retaliation.

These violations included the misuse of ex parte protective orders to seize custody of Plaintiff's children without hearing, the refusal to enforce binding appellate mandates, and the use of retaliatory litigation to punish Plaintiff for reporting judicial corruption and misconduct. Plaintiff was also subjected to threats, intimidation, and discriminatory treatment based on her protected disability status, despite orders granting her ADA accommodations, which were ignored or actively defied by Defendants.

Defendants' actions caused Plaintiff prolonged deprivation of familial association, loss of employment, emotional distress, reputational harm, physical health consequences, and

significant legal and financial injury.

The conduct described herein was arbitrary, malicious, and intended to injure Plaintiff in her person and property. It shocks the conscience and demonstrates deliberate indifference to Plaintiff's constitutional rights.

Plaintiff seeks compensatory and punitive damages, attorney's fees under 42 U.S.C. § 1988, and all other appropriate legal and equitable relief.

*Relevant Case Law*

**Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)** – Explains 'under color of law' for private actors entangled with public function.

**Zinermon v. Burch, 494 U.S. 113 (1990)** – A state's failure to provide procedural protections constitutes a due process violation.

**Count III: Disability Discrimination – ADA Title II & § 504 Rehabilitation Act**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This Count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Plaintiff is a qualified individual with a disability, including a medically documented seizure disorder (epilepsy), and was entitled to reasonable accommodations within the judicial system. The Defendants—acting under color of law—failed to provide accommodations and instead subjected Plaintiff to adverse treatment directly related to her disability.

Judge David Garcia willfully ignored Plaintiff's medical needs and violated an ADA

accommodation previously approved by the Chief Judge of Will County. Despite Plaintiff's documented seizure condition and hospitalization with pregnancy-related complications, Garcia declared her absent from a hearing she attended via Zoom while on IV bedrest and entered a default financial ruling against her.

Judge Antoinette Granholm has continued this pattern by insisting on in-person hearings despite Plaintiff's ADA protections and continuing medical conditions. Defendants refused to recognize valid medical accommodations and took no action to ensure Plaintiff's safety or equal access to the proceedings.

These acts of discrimination, retaliation, and denial of access caused Plaintiff undue emotional distress, prolonged litigation, and irreparable harm to her legal position and well-being.

Defendants' actions constitute disability-based discrimination in violation of the ADA and Rehabilitation Act. Plaintiff seeks declaratory relief, compensatory damages, injunctive relief, and reasonable attorney's fees under 42 U.S.C. § 12205 and 29 U.S.C. § 794a.

*Relevant Case Law*

**Tennessee v. Lane, 541 U.S. 509 (2004)** – Title II of the ADA applies to state court access and proceedings.

**Galloway v. Superior Court of D.C., 816 F. Supp. 12 (D.D.C. 1993)** – ADA protections extend to court operations.

**Count IV: Retaliation and Interference – First Amendment & 42 U.S.C. § 1983**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This Count is brought under the First Amendment to the United States Constitution and 42 U.S.C. § 1983, addressing unlawful retaliation and interference by state actors in response to Plaintiff's exercise of protected rights, including free speech, petitioning the government, and participation in legal proceedings.

Plaintiff engaged in constitutionally protected activities, including reporting misconduct to the Illinois Judicial Inquiry Board, the Chief Judge of Will County, the ARDC, the Village of Lockport, and other governmental and oversight bodies. She also filed appellate complaints, civil rights appeals, and whistleblower communications to various agencies concerning unlawful supervision practices and court corruption.

In direct response, Defendants—acting individually and in conspiracy—subjected Plaintiff to retaliatory conduct, including but not limited to: the filing of false protective orders, suppression of ADA accommodations, prolonged litigation delays, denial of reunification with her children, denial of appellate enforcement, the spreading of false information to judicial officials, and attempted discrediting of Plaintiff's character.

Guardian ad Litem David Gotzh actively interfered with Plaintiff's Rule 369(b) appellate review, misrepresented the content and purpose of appellate mandates, and engaged in public commentary that targeted Plaintiff and deflected accountability. He published social media content regarding Plaintiff's case while continuing to insert himself into proceedings after being removed from further investigation.

These actions constitute unlawful retaliation and interference with Plaintiff's protected right to seek redress and expose wrongdoing. They were undertaken to punish Plaintiff for challenging the enterprise and discourage her continued efforts.

Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

*Relevant Case Law*

**Hartman v. Moore, 547 U.S. 250 (2006)** – Protected speech retaliation must show a causal connection to adverse action.

**Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274 (1977)** – Even if a lawful reason exists, retaliation violates First Amendment.

## Count V: Conspiracy to Violate Civil Rights – 42 U.S.C. § 1985(2) and (3)

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This Count is brought pursuant to 42 U.S.C. § 1985(2) and (3), addressing conspiracies to interfere with civil rights through coordinated acts designed to obstruct justice, intimidate witnesses, and deny equal protection of the laws.

Defendants, including but not limited to Judges David Garcia and Antoinette Granholm, attorneys Patricia Flynn and Jeanine Parker-Ross, Guardian ad Litem David Gotzh, Lisa Lovelace, and Jodi Turnbough, knowingly agreed and acted in concert to prevent Plaintiff from lawfully pursuing custody, appellate relief, and whistleblower claims. This included intentional misrepresentation of facts to the court, fraudulent court filings, and coordinated efforts to interfere with or undermine appellate mandates.

The enterprise orchestrated false narratives, illicit supervision appointments, and unlawful orders of protection to suppress Plaintiff's claims and isolate her from her children. When Plaintiff sought to correct the record through legal process, Defendants retaliated by fabricating allegations, prolonging litigation, and attempting to render moot legitimate appellate victories.

Defendants' actions were motivated by animus toward Plaintiff's status as a whistleblower and protective parent and were intended to prevent her from accessing equal protection and due process rights afforded to others similarly situated.

As a direct and proximate result of the conspiracy, Plaintiff has suffered loss of custody, reputational harm, emotional distress, and economic injury. These harms were caused not by random errors, but by coordinated and deliberate acts among parties with judicial and administrative power who used that authority to target Plaintiff for exercising her rights.

Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

**EXHIBIT INDEX** (Placeholder)

The following is a placeholder for exhibits that will be submitted in support of this Complaint.

[Final versions of the exhibit list will be filed as a separate attachment per local rules.]

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Angela Cagwin respectfully requests that this Court grant the following relief:

1. Issue declaratory relief affirming that Defendants' actions violated Plaintiff's rights under the U.S. Constitution, RICO statutes, the Americans with Disabilities Act, and other applicable laws;

2. Enter preliminary and permanent injunctive relief enjoining Defendants from continuing to engage in retaliatory or unlawful conduct against Plaintiff or her children;

3. Award compensatory damages in an amount to be proven at trial, including economic losses, loss of employment, reputational harm, emotional distress, and the cost of supervised visitation and related litigation expenses;

4. Award punitive damages against Defendants whose conduct was intentional, reckless, or grossly indifferent to Plaintiff's rights;

5. Award treble damages under 18 U.S.C. § 1964(c) for RICO violations;

6. Award reasonable attorneys' fees and litigation costs under 42 U.S.C. §§ 1988 and 12205 and 18 U.S.C. § 1964(c);

7. Award such other and further relief as this Court deems just and proper under the circumstances.

***JURY TRIAL DEMAND***

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Angela Cagwin hereby

demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

DATED: _5/25/2025_

By: _____

Angela Cagwin
Pro Se Plaintiff
Address: 112 Laura Lane
New Lenox, IL 60451
Phone: 815-955-3092
Email: angiecagwin@yahoo.com