**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Angela Cagwin and Sarah Bechtold,<br><br>Plaintiff,<br><br>v.<br><br>David Garcia, et al<br><br>Defendants. | No. 25-cv-05662<br>Judge Franklin U. Valderrama |

## ORDER

Plaintiffs Angela Cagwin (Cagwin) and Sarah Bechtold (Bechtold) (together Plaintiffs) were involved in state-court divorce and child custody proceedings, which concluded in 2015 and 2017, respectively. Plaintiffs, proceeding *pro se*, sued various individuals and entities involved in those proceedings, namely the Honorable David Garcia and the Honorable Antoinette Granholm (Judicial Defendants), attorneys and guardians ad litem (GAL) Patricia Flynn, David Gotzh, Jeffrey Corso, and Jeanine Parker-Ross, supervision operator Lisa Lovelace, therapist operator Yolanda Olszewski, enterprise facilitator Jodi Turnbough, and business entities Kidz Above All, LLC, Midwest Appeals, LLC, Appellate Solutions, LLC, The Olszewski Center for Wellbeing, Ltd., and Flynn, Parker-Ross & Associates (together Defendants), asserting claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968; 42 U.S.C. § 1983; 42 U.S.C. § 1985(2)–(3); Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and 18 U.S.C. § 1513(e). R.36-1, Third Am. Compl. (TAC).[1]

Before the Court are Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). R. 66, Corso Mot. Dismiss; R. 76, Lovelace et al, Mot. Dismiss; R. 106, Olszewski et al. Mot. Dismiss; R. 108, Flynn et al. Mot. Dismiss; R. 110, Judicial Defs. Mot. Dismiss; R. 111, Gotzh et al Mot. Dismiss. As explained below, the motions are granted.

## Background

The Court did its best to decipher the facts from Plaintiffs' sprawling Third Amended Complaint and liberally construes their *pro se* pleading. *Otis v. Demarasse*,

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

886 F.3d 639, 644 (7th Cir. 2018); s*ee generally,* TAC. The Court also takes judicial notice of proceedings in other courts if the proceedings have a direct relation to matters at issue in this case. *See McCray v. Hermen*, 2000 WL 684197, at *2 n.1 (N.D. Ill. May 23, 2000) (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983)); *see also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."); *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."). This pertains to federal as well as state courts. *See*, *e.g.*, *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (noting that an order entered by a state court is a public record appropriate for judicial notice).

On this basis, and consistent with the information provided by Defendants in the motion to dismiss briefing, the Court takes judicial notice that Plaintiffs have filed multiple lawsuits concerning the subject matter in this action, namely the actions of state actors, officials, attorneys, GALs, court-appointed counselors, and others in relation to divorce and child custody proceedings originating in Will County, Illinois. *See Bechtold v. Olszewski,* No. 2019 L 1244 (Ill. 18th Jud. Cir. Ct. 2019*) Cagwin v. Flynn*, 2023 WL 7001743 (Ill. App. Ct. 2023); *Cagwin v. Henderson*, 2023 WL 6973855 (Ill. App. Ct. 2023); *In re Marriage of* Trend, No. 13 D 1217 (Ill. App. Ct. 2025). The Court also takes judicial notice that Cagwin has been declared a "vexatious litigant" subject to sanctions for filing a frivolous appeal in the underlying state court case in relation to a named defendant in this action. *See* Gotzh et al Mot. Dismiss at Ex. 1; *In re Marriage of* Trend, No. 13 D 1217 (Ill. App. Ct. 2025) (allowing motion of GAL Gotzh to declare Cagwin a vexatious litigant and for sanctions for the fees and costs incurred in defending against the filing of a frivolous appeal).

Plaintiffs Cagwin and Bechtold are current or former Illinois residents who were involved in Illinois state-court divorce and child custody proceedings. TAC at *2, 4, 14[2]. Cagwin's underlying state court case, *Trend v. Trend*, No. 2013 D 1217 (Ill. 12th Jud. Cir. Ct., Will Co.), was "closed" in August 2015 but still appears under mandate status. *See* Gotzh et al Mot. Dismiss at 2; Judicial Defs. Mot. Dismiss at Ex. 1. Bechtold's state court case, *Goldman v. Goldman*, No. 2014 D 37 (Ill. 12th Jud. Cir. Ct., Will Co), was "closed" in June 2017 but also still appears under mandate status. *See* Olszewski et al. Mot. Dismiss at 4; Judicial Defs. Mot. Dismiss at Ex. 2. Both of the underlying state court cases remain under court supervision, with a status hearing in *Trend v. Trend* as recently as August 31, 2026 and a status hearing in *Goldman v. Goldman* as recently as September 1, 2026.[3]

---

[2]Plaintiffs do not number the paragraphs in the Third Amended Complaint, so the Court cites to the relevant ECF page number.
[3]This information is publicly available through the 12th Judicial Circuit Court of Illinois' public docketing system, available at https://ipublic.il12th.org.

Plaintiffs' claims arise from their involvement with court or court-adjacent actors during the pendency of their state marriage dissolution cases, which were contentious. Plaintiffs claim a coordinated pattern of misconduct, self-dealing and retaliation by a network of individuals and related business entities (the "enterprise"). TAC at *1. The members of the so-called "enterprise" include Judge David Garcia and Judge Antoinette Granholm of the 12th Judicial Circuit Court of Will County, Illinois; attorneys and GALs Patricia Flynn, David Gotzh, Jeffrey Corso, and Jeanine Parker-Ross; a supervision operator, Lisa Lovelace, a court-appointed therapist, Yolanda Olszewski, a facilitator, Jodie Turnbough, and various entities owned by Defendants, including Midwest Appeals, LLC and Appellate Solutions, LLC, owned by Defendant Gotzh; The Olszewski Center for Wellbeing, Ltd., owned by Defendant Olszewski; Flynn, Parker-Ross & Associates, owned by Defendant Patricia Flynn; and Kidz Above All, LLC, owned by Defendant Lovelace. *See* TAC; Olszewski et al. Mot. Dismiss at 2-3; Lovelace et al. Mot. Dismiss at 2; Gotzh et al. Mot. Dismiss at 3. Plaintiffs allege the "enterprise" operated across multiple Illinois counties, including Will, Grundy and adjacent jurisdictions, and "combined public office authority with privately controlled business ventures to extend litigation, manipulate custody outcomes, and funnel supervision/therapy fees to affiliated accounts and LLCs." TAC at *4.

According to Plaintiffs, Defendants channeled litigants into enterprise-controlled supervision via undisclosed ties; suppressed or altered exculpatory evidence, including children's statements; manipulated assignments and outcomes via committee relationships and *ex parte* influence; retaliated against whistleblowers through smears, disclosure of confidential data, and obstruction; provided unlicensed or improper services and concealed deficiencies; spun up successor LLCs when scrutiny increased; and leveraged municipal and political connections to avoid accountability. TAC at *5. Before the Court are Defendants' fully briefed motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint over which the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). Challenges to subject-matter jurisdiction can be either "facial" or "factual." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district

courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Dig., Inc.,* 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3d at 444 (internal citations omitted). A factual challenge, on the other hand, contends that "there is in fact no subject matter jurisdiction even if the pleadings are formally sufficient." *Apex Dig., Inc.,* 572 F.3d at 444.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the other hand, challenges the sufficiency of the complaint. *Hallinan*, 570 F.3d at 820. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. *Rule 12(b)(1)*

The Court begins, as it must, with Defendants' arguments relating to subject-matter jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (a court "may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)"). The Court also has "an independent obligation to ensure that subject matter jurisdiction exists." *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 970 (N.D. Ill. 2015).

The Court is aware of Plaintiffs' repeated statements, both in the complaint and in opposition to the motions to dismiss, that this action does not seek "review, reversal, or modification of any state-court judgment" and instead "challenge[s] independent unlawful conduct" such as "retaliation, collusive enterprise activity, fraud, obstruction, ADA/§504 violations, and related misconduct." TAC at *3; *see also* Gotzh et al. Resp. at 2. But disclaiming abstention does not make it so. Given the connection between this action and the underlying state court proceedings, the Court must determine whether it has subject matter jurisdiction.

Defendants advance several arguments in support of their motions to dismiss for lack of subject matter jurisdiction. The Court addresses each in turn.

*a. Rooker Feldman Doctrine*

Defendants argue that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine derives its name from two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments … [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (internal quotation marks omitted).

The *Rooker-Feldman* doctrine applies when (1) the federal plaintiff is a state-court loser; (2) the state-court's judgment became final before the federal proceedings began; (3) the state-court's judgment caused the injury underlying the federal claim; and (4) the claim invites a federal district court to review and reject the state-court's judgment. *Gilbank v. Wood Cnty. Dept. of Human Services*, 111 F.4th 754, 766. (7th Cir. 2024). In the Seventh Circuit, there is an additional element: the *Rooker-Feldman* doctrine does not bar jurisdiction over a plaintiff's federal claim if the state-court loser did not have a reasonable opportunity to raise the federal issue in state court. *Id*. *Rooker-Feldman* is limited to federal claims that "directly" challenge a state court judgment or are "inextricably intertwined" with one. *Hadzi-Tanovic*, 62 F.4th at 399. "To determine whether a plaintiff's federal claims are inextricably intertwined with the state court judgment, we ask whether the plaintiff alleges an injury caused by the state court judgment." *Id*. (citation omitted). The question is whether the district court is "essentially being called upon to review the state court decision." *Id*. (citing *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017)).

That the underlying cases are still pending in state court is not necessarily a bar to *Rooker-Feldman*'s application. In *Hadzi-Tanovic*, the Seventh Circuit discussed the application of *Rooker-Feldman* in cases where, like here, ongoing court supervision meant formal resolution of the case had not occurred. 62 F.4th at 398-99. The Seventh Circuit found that *Rooker-Feldman* applied to bar the plaintiff's claims related to parenting time, as the challenged state court judgment in the case was "rendered before the district court proceedings commenced," so the plaintiff was a state-court loser. *Id*. at 399-400. The federal case was challenging an order that was final and appealable when the federal lawsuit was filed; that the state court may modify the order in the future did not change that determination. *Id*.; *see also Obi v. Cook Cnty.,* 2025 WL 3215780, at *3 (N.D. Ill. Nov. 18, 2025) ("The state court's

continued management of custody and child support-related issues under the same caption does not alter the [final] character of the underlying custody order" and *Rooker-Feldman* bars review of the final custody order). Cagwin, here, has indeed appealed state court orders that relate to the issues and Defendants in this federal action. *See In re Marriage of* Trend, No. 13 D 1217 (Ill. App. Ct. 2023) (appealing order from Defendant Judge Garcia regarding custody that involved supervised visitation).

Defendants maintain that "Plaintiffs' claims either directly challenge state court orders, or are inextricably intertwined with" state court orders and "are not independent of the state court action." Olszewski et al. Mot. Dismiss at 9; *see also* Lovelace et al. Mot. Dismiss at 4-5; Flynn et al. Mot. Dismiss at 1-4. Defendants emphasize that "Cagwin objected to those orders and appealed many of them, availing herself of the proper channels of relief in the Illinois state courts." Lovelace et al. Mot. Dismiss at 4. From Defendants' perspective, Plaintiffs "cannot fashion new federal claims from the various actions which occurred in her state court divorce proceedings." *Id*. at 5. "To grant the relief sought, this Court would be required to sit in direct review of these prior state court rulings," Defendants argue. Flynn et al. Mot. Dismiss at 3. Plaintiffs respond that they do not seek to overturn any state court order. Olszewski et al. Resp. at 4-5. Plaintiffs insist that "Defendants caused independent injuries through Defendants' own conduct, which can be adjudicated without this Court vacating or rewriting any family-court order." *Id*. At bottom, Plaintiffs maintain that their injuries "would exist even if state decrees remained as-is." Gotzh et al. Resp. at 3.

Here, although a close call, the Court finds that *Rooker-Feldman* does not apply as the fourth element, that plaintiff asks the district court to "review and reject" a specific state court judgment, is not met. *Gilbank*, 111 F.4th at 778. "The Supreme Court has repeatedly emphasized that Rooker-Feldman is confined to cases where the plaintiff asks the federal court to overturn a state court judgment." *Gilbank*, 111 F.4th at 767. The Seventh Circuit looks to the relief sought in order to determine "if the plaintiff has indeed asked the court to reject a state court judgment." *Wortham v. Village of Barrington Hills*, 2026 WL 1662115, at *2 (7th Cir. June 9, 2026) (citation omitted). Here, Plaintiffs do not ask the Court to reject a specific, final, state court judgment and as such, *Rooker-Feldman* does not apply. *See Cole v. Faulkner*, 2025 WL 1359054, at *2 (N.D. Ill. May 9, 2025), *aff'd*, 2026 WL 162170 (7th Cir. Jan. 21, 2026) ("Rooker–Feldman does not apply when, given the relief sought, a plaintiff ... does not seek to reverse a state court judgment.") (citation omitted).

However, the Court would be remiss if it did not mention that although Plaintiffs do not take issue with a specific state-court order[4], all of their claims arise

[4]To be clear, however, Plaintiffs do repeatedly *reference* orders throughout the Third Amended Complaint that call into question whether they are, in fact, seeking to overturn specific state court orders. *See, e.g.*, TAC at *6 (referencing an order that "triggered

from and were "caused by" state-court decisions. *See Gilbank*, 111 F.4th at 767 (*Rooker-Feldman*'s "injury element hinges on whether the federal claim alleges an injury caused by the state court judgment or an independent prior injury that the state court failed to remedy") (citation omitted). The "[c]hanneling [of] litigations into Enterprise-controlled supervision," "[s]uppressing/altering [of] exculpatory evidence," "[m]anipula[tion] [of] assignments/outcomes via committee relationships and ex parte influence" and provision of "unlicensed/improper services" were all caused by state-court orders in the underlying cases. TAC at *5. The relief requested by Plaintiffs further undermines their contention that the federal claims are independent of the state court claims. *See Wortham v. Vill. of Barrington Hills*, 2026 WL 1662115, at *2 (7th Cir. June 9, 2026) ("We consider the relief the plaintiff requests to determine if the plaintiff has indeed asked the court to reject a state court judgment.") (internal citation omitted). For example, the "Prayer For Relief" seeks "[p]rospective declaratory and injunctive relief, including orders barring Defendants from continuing the challenged practices…" TAC at *35. The challenged practices are far-ranging and all relate to the state court proceedings, including court-ordered supervision, assignment of judges and GALs, evidence included in reports and at hearings, and fees paid in state court litigation. *See generally,* TAC. Barring Defendants from the "challenged practices" would necessarily require the Court to review or disrupt the underlying state court cases.

Plaintiffs, likely understanding that pointing to specific state court orders would render their claims subject to *Rooker-Feldman* jurisdictional challenges, do not make clear allegations to that effect. Again, while a close call, the Court declines to apply the *Rooker-Feldman* doctrine here as Plaintiffs have plead their claims in such a way that the elements are not met. *See Jakupovic v. Curran*, 850 F.3d 898, 902 (7th

---

unlawful police involvement at school"); *Id.* at *9 (Defendant Flynn "falsely conducted emergency orders of protection on behalf of Defendants Lisa Lovelace and Jodi Turnbough… These orders were sought and obtained to prevent Plaintiff Cagwin's contact, and to place her at a strategic disadvantage in concurrent family court litigation."); *Id.* at *11 (Defendant Judge Granholm "[i]ssued an order that [was] later used to bring police enforcement into a public high school for an unofficial scare tactic on a minor"); *Id.* at *11-12 (Defendant Judge Garcia entered "adverse orders and tightened restrictions followed without proper hearings" and "[i]ssued arrest warrants without notice/hearing and refused to honor fee waivers"); *Id.* at *13 (Defendant Lovelace "[p]ushed for protective orders"); *Id.* at *16 ("The Olszewski Center for Wellbeing, Ltd. Provided purported therapeutic supervision under orders funneled through the same network"); *Id.* at *22 (Defendant Judge Garcia made "[d]efault orders" to "extort[] the IRS" and "[e]ntered default financial rulings and arrest-related orders without notice/hearing"); *Id.* at *29 (Plaintiff, as an injury, seeking "costs from unlawful orders"); *Id.* at *30 (Defendant Judge Garcia "demanded Plaintiff Bechtold's confidential medical records as a condition of child contact, without protective order or in camera review, after which Defendant Patricia Flynn entered Garcia's chambers and removed said documents without lawful leave of court"); *Id.* at *31 ("After Plaintiffs reported misconduct to agencies, Defendants took adverse legal actions, issued restrictive orders without hearings").

Cir. 2017) ("Notably, the *Rooker-Feldman* doctrine is a narrow one.") (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).

*b. Younger Abstention*

Alternatively, Defendants argue that *Younger* abstention applies to bar Plaintiffs' claims.

"*Younger* [abstention] generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). *Younger* "require[s] federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998). Importantly, *Younger* is applicable in "three limited categories of cases ...: where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021).

Courts in this district have found that child custody cases like the ones in this action do not fit into the three *Younger* categories. *See Lopez v. Kubalanza*, 2025 WL 2306815, at *11 (N.D. Ill. Aug. 11, 2025) ("To the Court's knowledge, the Seventh Circuit has extended *Younger* abstention to custody proceedings only when the *state* has initiated them … The Seventh Circuit, in fact, has expressly recognized that 'none' of the limited categories where *Younger* applies 'fits exactly' when a child custody proceeding is initiated by a private party."). There are no allegations that the state initiated the custody proceedings here.

Accordingly, the Court declines to apply *Younger* abstention.

*c. Domestic Relations Exception*

Defendants next argue that Plaintiffs' claims are barred by the domestic relations exception to jurisdiction. This is a well-established exception to federal subject matter jurisdiction. *See Barber v. Barber,* 62 U.S. (21 How.) 582, 584 (1859); *Ankenbrandt v. Richards,* 504 U.S. 689, 694–95 (1992) (reaffirming the exception). The exception precludes federal courts from exercising jurisdiction over claims implicating "the issuance of a divorce, alimony, or child custody decree." *Budorick v. Maneri*, 697 F. App'x 876, 878 (7th Cir. 2017). The Seventh Circuit has explained that "the domestic-relations exception to federal jurisdiction blocks the adjudication of claims that turn on the application of family law." *Taylor v. Cir. Ct. of Cook Cnty.,*

*Illinois*, 2025 WL 601213, at *2 (7th Cir. Feb. 25, 2025). The Seventh Circuit and courts in this district have read the exception to be narrow, however. *See Woodard*, 997 F.3d at 723 ("Edwin's procedural and substantive due process claims do not fit the narrow and precise parameters of the exception, however, because his complaint does not, at least on its face, request the direct entry of a child custody order."); *Lopez*, 2025 WL 2306815, at *12 ("Her requests for damages based on the defendants' allegedly fraudulent conduct are not barred by [the domestic relations] exception, as they would not require this Court to issue any family-law rulings. The Court's analysis of these claims may call into question the state court's child custody proceedings, but they would not directly affect any state-court, family-law order.").

Defendants contend that this federal litigation necessarily involves "conflict[s] with the state court case" and that any defense to the case would require Defendants to disclose "confidential portions of the state court litigation," for example reports written by GALs. Gotzh et al. Mot. Dismiss at 9; *see also* Flynn et al. Mot. Dismiss at 4-6. Defendants also argue that "[a]ny judgment from this Court, along the lines sought by plaintiffs, would materially affect the orders the state court entered," for example by terminating ongoing care by a court-appointed counselor or otherwise altering court-appointed relationships "contrary to what a state court ordered." Olszewski et al. Mot. Dismiss at 11. Defendants posit that these outcomes would implicate the issuance of the underlying state court child custody decrees. *Id*.

Plaintiffs disagree, arguing that the domestic relations exception is inapplicable where Plaintiffs "do not ask this Court to award custody, modify parenting time, vacate a divorce judgment, or declare a state-court order 'void.'" Olszewski et al. Resp. at 2. Plaintiffs also point to the fact that the domestic relations exception is narrow. Gotzh et al. Resp. at 4. Plaintiffs further argue that the domestic relations exception is a narrow limitation on diversity jurisdiction and since Plaintiffs bring federal-question claims, the exception does not apply. *Id*. This is incorrect. "That this case is brought under the Court's federal-question jurisdiction, rather than its diversity jurisdiction, makes no difference" in the application of the domestic relations exception. *Merritt v. Grady*, 2024 WL 3581915, at *2 (N.D. Ill., 2024) (citing *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (explaining that the domestic-relations exception to federal jurisdiction "appl[ies] to both federal-question and diversity suits")).

However, Plaintiffs are correct that the domestic relations exception is not applicable to Plaintiffs' claims as plead. On its face, the Third Amended Complaint does not request that the Court directly interfere with a specific domestic relations order. Under the narrowly construed domestic relations exception, the claims are not barred.

*d. Other Principles of Abstention*

Although *Rooker-Feldman, Younger,* and the domestic relations exception do not apply neatly to this case, the Court finds that general "principles of equity, comity, and federalism [that are] foundational to our federal constitutional structure" require this Court to abstain from exercising jurisdiction over Plaintiffs' claims. *Woodard*, 997 F.3d at 714, 721 ("Observing that no abstention doctrine is an exact fit does not resolve the jurisdictional inquiry"). In making this determination, the Court is mindful that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id*. This represents a situation where "a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *Id*.

Each of Plaintiffs' claims ask the Court to second-guess the state court's determinations in the underlying divorce and child custody proceedings and to review the merits of the state court's rulings. That Plaintiffs package these claims as RICO-allegations, § 1983 claims or ADA claims does not change this finding. *See Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009) ("if it walks like a duck, swims like a duck, and quacks like a duck, it's a duck"); *Dillon v. Alan H. Shifrin & Assocs., LLC*, 2017 WL 2480706, at *4 (N.D. Ill. June 8, 2017) (concluding that abstention "prevented [the plaintiff from litigating child support and attorney's fee issues under] RICO (or anything else he can conjure up as a basis for federal-question jurisdiction)."). Plaintiffs' complaint "makes plain that the entire design of [their] federal action" is "to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *Woodard*, 997 F.3d at 723.

This finding is further supported by Plaintiffs' naming as Defendants in this federal lawsuit the state court judges in the underlying actions. That Plaintiffs have named judges as Defendants "indicates an intent to disrupt the state-court proceedings." *Lopez*, 2025 WL 2306815, at *14. "[T]he case for abstention is even stronger when the plaintiff names a judge as a defendant, as it shows a direct challenge to the legitimacy of the state court's actions." *Id*. (collecting cases) (cleaned up). Plaintiffs' "unsupported contention that [they are] not challenging state-court judgments cannot overcome the readily apparent fact that the "entire design" of this federal action is to undermine those proceedings." *Id*. (citing *Woodard*, 997 F.3d at 723).

Take for example the relief Plaintiffs seek: prospective declaratory and injunctive relief, including "orders barring Defendants from continuing the challenged practices." TAC at *35. Both Plaintiffs' state court cases remain under court supervision, and the "challenged practices" are "exploit[ing] family-court litigants" to "extend litigation, manipulate custody outcomes, and funnel supervision/therapy fees to affiliated accounts and LLCs." *Id*. at *2, 4. To bar Defendants from these "challenged" practices would be to disrupt every aspect of

Plaintiffs' underlying state court cases and to call into question each decision made therein. "These claims all essentially ask the Court to second-guess the state court's determinations in the Custody Lawsuit and review the merits of the state court's rulings." *GW v. Scannicchio*, 2026 WL 1140258, at *6 (N.D. Ill., 2026). This Court declines to do so.

While Plaintiffs' ADA claims seem separate, they too, are barred by abstention. Plaintiffs allege Judicial Defendants denied "meaningful access to court programs and services" and allege they "denied ADA accommodations; on one occasion, while Plaintiff attended via Zoom from the hospital on IV bedrest, [Judge] Garcia declared her "absent" and entered a default financial ruling." TAC at *12, 33. To grant Plaintiffs the relief they seek, the Court would have to determine that Judicial Defendants' decisions regarding accommodations in the underlying state court cases violated federal law. This relief would set aside the decisions made at those hearings, for example the hearing where Plaintiff was allegedly declared "absent" and a default financial ruling was entered. TAC at *12. This Court cannot exercise jurisdiction over Plaintiffs' ADA claims under abstention principles. *See Lopez*, 2025 WL 2306815, at *12–14 (N.D. Ill. Aug. 11, 2025) (applying comity abstention to First Amendment and ADA claims against judges and court employees who denied the plaintiff's requests for disability accommodations in state court child custody proceedings).

At bottom, in cases where a federal court's jurisdiction would "intrude upon the independence of the state courts and their ability to resolve the cases before them," "federal courts need to stay on the sidelines." *Woodard*, 997 F.3d at 722-23. This reasoning applies "with equal force to [Plaintiffs'] request for declaratory and injunctive relief, as well as [their] request for compensatory damages." *Id*. at 724.

While generally a stay of the case is the proper disposition where plaintiffs seek compensatory damages, "a stay is not practical" here. *Woodard*, 997 F.3d at 725. Both Plaintiffs have ongoing state court oversight of custody proceedings, which will continue until the children reach 18 years of age. "A district court is not required to have cases linger for years on the federal docket while awaiting the end of custody proceedings." *Lopez*, 2025 WL 2306815, at *14 (citation omitted). The Court therefore abstains from exercising jurisdiction over Counts I, II, III, IV, V, VI and VII of Plaintiffs' complaint and dismisses those claims.

## II. ***Judicial Immunity***

Even if abstention did not apply, Plaintiffs' claims against the Judicial Defendants, the Honorable David Garcia and the Honorable Antoinette Granholm, are barred by judicial immunity. Plaintiffs' complaint brings ten claims against the Judicial Defendants in their "official capacity." TAC at *33. Judicial Defendants argue these claims are barred by absolute judicial immunity.

The doctrine of judicial immunity confers complete immunity from suit, not just a mere defense to liability. *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). As the Seventh Circuit has explained, "[j]udicial immunity extends to acts performed by the judge in the judge's judicial capacity." *Id.* (cleaned up). The Supreme Court elucidates this principle further, stating, "[a]lthough unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (cleaned up); *see also Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."). Three factors generally govern the determination of whether a particular act or omission is judicial: (1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might have been committed to a private person as to a judge; (2) whether the act is normally performed by a judge; and (3) the expectations of the parties, *i.e.* whether the parties dealt with the judge as a judge. *Dawson*, 419 F.3d at 661.

Predictably, Plaintiffs disagree that judicial immunity is applicable here, arguing that the Third Amended Complaint alleges conduct "not limited to ordinary adjudication, including enterprise-related campaign-finance relationships tied to a court-fed supervision provider, alleged off-the-record strategy coordination during breaks, and repeated disability-access and record-access failures." Judicial Def. Resp. at 5. From Plaintiffs' perspective, the Third Amended Complaint alleges conduct that is "[a]dministrative" or "non-judicial" and thus "not shielded by absolute judicial immunity." *Id*.

The Court finds that the Judicial Defendants have the better of the argument. Contrary to Plaintiffs' argument, the conduct Plaintiffs allege was well within the judicial capacity of the Judicial Defendants. As to Judge Garcia, Plaintiffs allege a relationship with another Defendant, wherein Judge Garcia was "feeding" Defendant Lovelace "court-ordered supervision work." Judicial Def. Resp. at 2. Judge Garcia ordered supervision in his official capacity as a judge and this action was undoubtedly within his jurisdiction in the underlying child custody cases. As to Judge Granholm, Plaintiffs allege "that after she replaced Judge Garcia, Plaintiffs repeatedly provided notice of the Illinois Appellate Court's August 8, 2023 mandates in Trend v. Trend restoring the Marital Settlement Agreement ("MSA"), yet Granholm repeatedly refused for extended periods to read and enforce the mandates, proceeded with hearings and trial structures inconsistent with them, entertained fee and sanctions efforts by enterprise-connected actors, and denied reasonable accommodations and transcript/record access needed for Plaintiff Cagwin's disability-related limitations and fee-waiver status." *Id*. at 2-3. These actions were, again, squarely within Judge Granholm's judicial capacity. Plaintiffs make no allegations that the Judicial

Defendants "acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."); *see also Girard v. Vill. of Glencoe,* No. 24 C 6882, Doc. 121, at 4 (N.D. Ill. Aug. 12, 2025) (judicial immunity barred claims against judges, who purportedly entered orders unfavorable to the plaintiff in exchange for bribes, because the "entering of orders were judicial acts taken pursuant to the jurisdiction of the Circuit Court of Cook County").

And while judicial immunity "does not categorically bar injunctive relief," the injunctive relief requested here against the Judicial Defendants falls within the abstention ruling above as such relief seeks to directly interfere with prior and pending state-court determinations. *See Thom v. Balgeman*, 2025 WL 2803962, at *2 (E.D. Wis. Oct. 2, 2025) (citing *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023)).

At bottom, Plaintiffs' claims "concern [Judicial Defendants'] judicial decisions and how they conducted the family court proceedings, and they are therefore entitled to absolute immunity." *Taylor*, 2025 WL 601213, at *2. Because Plaintiffs lack plausible claims against Judicial Defendants, they will be dismissed as defendants.

## III. *Remaining State Law Claims*

The Court, *supra,* finds that abstention and judicial immunity apply to the majority of Plaintiffs' claims. The only claims that remain are contained in Count VIII, "State-Law Claims" of fraud, abuse of process and intentional infliction of emotional distress. TAC at *34-35. These claims arise under state law. "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (internal citations omitted). The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them.

## Conclusion

Given the Court lacks jurisdiction, it cannot and need not address Defendants' remaining arguments.

To summarize, this case is dismissed without prejudice for want of subject matter jurisdiction. Given the Court lacks jurisdiction, it cannot and need not address Defendants' remaining arguments. Indeed, "[t]o say that abstention is in order then is to say that federal courts should not address the merits, period." *Watkins v. Muhammad*, 2024 WL 4524525, at *3 (7th Cir. Oct. 18, 2024) (quoting *Greening v. Moran*, 953 F.2d 301, 304 (7th Cir. 1992)). Plaintiffs have until October 5, 2026 to file another amended complaint, if they so choose. If Plaintiffs choose to amend their Complaint, in light of the Court's rulings on subject matter jurisdiction and judicial immunity, they are reminded of Federal Rule of Civil Procedure 11 requirements that they (1) are not using the filing for any improper purpose, such as harassment, (2) have included claims warranted by existing law and containing nonfrivolous arguments, and (3) have included factual allegations with evidentiary support. Fed. R. Civ. P. 11(b); *see also Phoenix Airway Inn Associates v. Essex Fin. Services, Inc.*, 741 F. Supp. 734, 736 (N.D. Ill. 1990) (imposing monetary sanctions for plaintiff's failure to reasonably investigate facts relating to jurisdiction prior to filing its complaint); *Atkins v. Gilbert*, 52 F.4th 359, 362 (7th Cir. 2022) (Plaintiff "should be aware, though, that persistence in filing frivolous claims or appeals can invite sanctions from the court"). Any amended complaint must clearly reflect the basis upon which the Court has subject matter jurisdiction over the claims, and the basis of personal jurisdiction over the Defendants for those claims, and meet the requirements of Federal Rules of Civil Procedure 8 and 10(b).

Date: 9/21/2026

United States District Judge
Franklin U. Valderrama